UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SERGEANTS BENEVOLENT ASSOCIATION
HEALTH AND WELFARE FUND,
NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, and ALLIED SERVICES
DIVISION WELFARE FUND on behalf
of themselves and all others similarly            **REPORT & RECOMMENDATION**
situated,

                 Plaintiffs,            08-CV-0179 (SLT) (RER)

    -against-

SANOFI-AVENTIS U.S. LLP, and
SANOFI-AVENTIS U.S., INC.

                 Defendants.
------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

        **TO THE HONORABLE SANDRA L. TOWNES,**
           **UNITED STATES DISTRICT JUDGE**

On January 14, 2008, Plaintiffs Sergeants Benevolent Association Health and Welfare Fund ("SBA"), New England Carpenters Health Benefits Fund ("NEC"), and Allied Services Division Welfare Fund ("Allied Services") (collectively, "Plaintiffs") commenced this action against Sanofi-Aventis U.S.A. LLP and Sanofi-Aventis U.S.A., Inc. (collectively, "Aventis" or "Defendants") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) & (d), violations of forty-four state consumer protection laws, and unjust enrichment.

Defendants now move for summary judgment on all of Plaintiffs' claims. On January 5, 2012, Your Honor referred the motion to me for a Report and Recommendation. (Dkt. No. 152.)

For the reasons that follow, I respectfully recommend that Defendants' motion be granted in its entirety.

## BACKGROUND[1]

Plaintiffs SBA, NEC, and Allied Services, are employee welfare plans located in New York, Massachusetts, and Illinois, respectively. (*See* Sec. Am. Compl. ¶¶ 2-4.) As third-party payors ("TPPs"), Plaintiffs provide prescription drug benefits to their members. (*See* Defs.' Stmt. of Undisputed Material Facts in Supp. of their Mot. for Summ. J. as to the Individual Claims of Each of the Named Pls. (Dkt. No. 146) ("Defs.' 56.1 Stmt.") ¶¶ 8-10.) Pharmacy benefit managers ("PBMs") administer Plaintiffs' prescription drug benefits. (*Id.* ¶ 11.) In general, TPPs include a formulary in their prescription drug benefits plans, which is a listing of the prescription drugs they will subsidize. (*Id.* ¶ 12.) PBMs typically use special committees, pharmacists, physicians, and Pharmacy and Therapeutics Committees to develop, manage, and update their formularies. (*Id.* ¶ 14.) Plaintiffs all covered Ketek, the brand name for the prescription drug telithromycin, in accordance with their respective formularies or plans. (*See id.* ¶¶ 29-30, 32; *see also* Answer to Sec. Am. Compl. ¶ 10.)

Defendant Sanofi-Aventis U.S. LLC ("Aventis"), which is a limited liability company organized under the laws of Delaware with its principal place of business in New Jersey (*id.* ¶ 5), designed, formulated, marketed, and distributed Ketek. (*Id.* ¶ 10.) Although Ketek initially received FDA approval for the treatment of community-acquired pneumonia ("CAP"), acute

---

[1]  The facts of this case are amply set forth in the Report and Recommendation and Order on Plaintiffs' motion for class certification, and I repeat them here only to the extent necessary for the analysis below. (*See* Report and Recommendation dated 02/16/11 (Dkt. No. 133) ("02/16/11 R&R"); Mem. & Order dated 03/30/11 (Dkt. No. 136).)

2

bacterial exacerbation of chronic bronchitis ("AECB"), and acute bacterial sinusitis ("ABS"), the drug is now approved only for CAP.  (Defs.' 56.1 Stmt. ¶¶ 1, 3-4.)  Plaintiffs allege that Defendants fraudulently represented the safety and efficacy of Ketek first to procure Food and Drug Administration ("FDA") approval of the two non-CAP indications and then to market Ketek for a wide range of purposes.  (*See*, *e.g.*, Sec. Am. Compl. ¶¶ 29-31.)

On June 4, 2008, Plaintiffs filed a Second Amended Class Action Complaint on behalf of themselves and TPPs "which paid or incurred costs for the drug Ketek from April 1, 2004 to February 1, 2007 for uses other than community-acquired pneumonia."  (*Id.* ¶ 59.)  Plaintiffs sought recovery under RICO, forty-four different state consumer protection acts, and unjust enrichment.  Plaintiffs subsequently moved for class certification and on May 10, 2010 Your Honor referred that motion to me for a report and recommendation ("R&R").  (Order Referring Motion, filed 05/11/10, (Dkt. No. 113).)

In a R&R dated February 16, 2011, I found that the proposed class could not be certified because Plaintiffs could not establish causation under RICO through common proof.  (R&R, filed 02/16/11, (Dkt. No. 133).)  Your Honor adopted that R&R on March 30, 2011.  (Mem. & Order, filed 03/30/11, (Dkt. No. 136).)  Plaintiffs subsequently filed a petition for leave to appeal the decision on their motion for class certification, which the Second Circuit denied on July 28, 2011.  (USCA Mandate, filed 07/28/11, (Dkt. No. 138).)

Thereafter, the parties agreed to a briefing schedule for Defendants' summary judgment motion.  (Status Report, filed 08/31/11, (Dkt. No. 140); Stip. Joint Stip. Ext. Summ. J. Briefing Schedule By One Week, filed 11/22/11 (Dkt. No. 142) *endorsed on* 11/28/11 (Dkt. No. 143).) On December 22, 2011, Defendants filed the fully briefed summary judgment motion (Dkt. Nos.

144-151), which Your Honor referred to me. (Order Referring Motion, filed 01/05/12, (Dkt. No. 152).)

## DISCUSSION

### I. Summary Judgment

The standard for summary judgment is well established. The party moving for summary judgment has the burden to demonstrate the following: (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact is one that "might affect the outcome of the suit under the governing law" and that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). In determining whether summary judgment is warranted, "[t]he Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst),* 101 F.3d 845, 854 (2d Cir. 1996)). The nonmovant cannot create a genuine dispute of material fact by "rely[ing] on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Cushing v. Morning Pride, Mfg., L.L.C.*, No. 05-CV-3612 (DRH), 2008 WL 283772, at *10 (E.D.N.Y. Jan. 30, 2008) (citation and internal quotation marks omitted).

## II.     **Plaintiffs' RICO Claims**

RICO provides potential plaintiffs a private cause of action for injuries caused "by reason of" a defendant's racketeering activity.  18 U.S.C. §§ 1962, 1964(c).  As in the Court's previous decision on class certification, the dispositive issue as to Plaintiffs' RICO claims is causation.

The Second Circuit has clearly articulated the standard for establishing the RICO causation element:

> To show injury by reason of a RICO violation, a plaintiff must demonstrate that the violation caused his injury in two senses.  First, he must show that the RICO violation was the proximate cause of his injury, meaning "there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994). Second, he must show that the RICO violation was the but-for (or transactional) cause of his injury, meaning that but for the RICO violation, he would not have been injured. See *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010) [hereinafter, "*Zyprexa*"]. The Supreme Court has held that a plaintiff alleging a RICO violation need not demonstrate first-person reliance to establish causation, but proof of at least third-party reliance is required. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) ("Of course, none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that someone relied on the defendant's misrepresentations.") (internal citations and emphasis omitted).

The parties are familiar with this standard, as the issue of causation was determinative of Plaintiffs' unsuccessful class certification motion.  In fact, Plaintiffs recognize that their opposition to Defendants' motion for summary judgment relies on arguments similar to those previously rejected by Your Honor in denying class certification.  (Pls.' Mem. 9.)  As Your

5

Honor has duly considered the element of causation in denying class certification - and given that "the issues at class certification and summary judgment are closely linked" (*id.*) - I will address only the most salient points below.

In proffering their renewed causation argument, Plaintiffs contend that a party who suffers an injury that is a "foreseeable and natural result" of a defendant's conduct may satisfy RICO causation even where intervening factors are present. (Pls.' Mem. at 16.) However, the Supreme Court has advised that "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm," even though "concepts of direct relationship and foreseeability are of course two of the many shapes [proximate cause] took at common law." *Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 991 (2010) (citation and quotation marks omitted); *McBrearty v. Vanguard Grp., Inc.*, 353 F. App'x 640, 642 n.1 (2d Cir. 2009) ("Although foreseeability is often the test of proximate causation at common law, RICO causation is a concept distinct from 'proximate causation as that term is used at common law.'") (citation omitted).

In *Zyprexa*, the Second Circuit found that "the independent actions of prescribing physicians" interrupt the causal relationship between the predicate act and Plaintiffs' harm, thereby "thwart[ing] any attempt to show proximate cause through generalized proof." *Zyprexa*, 620 F.3d at 135. As such, once this causal chain is interrupted by the actions of the prescribing physicians, individualized proof is required to show proximate cause under RICO.

Plaintiffs disagree with *Zyprexa*, arguing that the Second Circuit "misreads" the Supreme Court's decision in *Hemi Grp.* (Pls.' Mem. at 14.) Plaintiffs suggest that while *Zyprexa* holds that the "mere existence of additional actors" defeats RICO causation, *Hemi Grp.* leaves intact a

6

separate line of cases "holding that conduct by non-parties *in response to a RICO scheme* satisfies RICO causation." *Id.* Notwithstanding Plaintiffs' criticism of the case, *Zyprexa* controls here, as district courts are bound "to follow controlling precedents of the courts of appeals for their circuits." *Jackson v. Good Shepherd Servs.*, 683 F. Supp. 2d 290, 292 (S.D.N.Y. 2009).

In any event, I disagree with Plaintiffs' interpretation of *Zyprexa*. The Second Circuit found that the causal chain is disrupted not by the "existence of additional actors," but by the independent *actions* of physicians who make prescribing decisions based on a multitude of factors:

> An individual patient's diagnosis, past and current medications being taken by the patient, the physician's own experience with prescribing *Zyprexa*, and the physician's knowledge regarding the side effects of *Zyprexa* are all considerations that would have been taken into account in addition to the alleged misrepresentations distributed by Lilly.

*Zyprexa,* 620 F.3d at 135. Thus, the Second Circuit recognized that prescribing decisions are based, to varying degrees, on factors independent of the alleged misrepresentation. Accordingly, to establish RICO causation, Plaintiffs must prove that *each prescribing physician* relied on Defendants' alleged fraud in deciding to write a Ketek prescription.

Here, however, Plaintiffs only provide aggregate proof of causation, arguing that Defendants' alleged omission of critical health information necessarily affected every physician's prescribing decision because physicians always consider safety in making treatment decisions. Plaintiffs made the same argument at the class certification stage. (Objection to R&R, filed 03/01/2011, (Dkt. No. 133) at 4.) Your Honor concluded that this argument "does not alter the [*Zyprexa*] court's overall finding that the 'independent actions of prescribing physicians' disrupt

7

the causal chain under a quantity effect theory and thereby thwart a showing of generalized proof." *Sergeants Benev. Ass'n Health and Wealfare Fund v. Sanofi-Aventis U.S. LLP,* No. 08–CV–0179 (SLT)(RER), 2011 WL 1326365, at *4 (E.D.N.Y. Mar. 30, 2011). Your Honor suggested that "physicians may have relied upon Aventis' representations to different degrees, or not at all." *Id.* Thus, as in the class certification context, plaintiffs must offer individualized proof of causation, which they have still failed to do.

In short, Plaintiffs' generalized proof is insufficient to establish proximate cause for every alleged injury resulting from non-CAP prescriptions. Although safety may be a fundamental consideration in a physician's prescription decision, individualized proof is required to determine whether a given physician factored Defendants' alleged misrepresentation into his or her decision to prescribe Ketek for either AECB or ABS. Without this proof, causation cannot be established and Plaintiffs' RICO claims fail as a matter of law. *See United Fence & Guard Rail Corp. v. D. Lambert Railing Co., Inc.*, 777 F. Supp. 205, 208 (E.D.N.Y. 1991) ("As to the absence of a showing of the material element of causation, plaintiff has failed to raise a genuine issue of fact; accordingly, defendants' motions for summary judgment must be granted."); *accord Pardy v. Gray*, 07 CIV. 6324 (LAP), 2008 WL 2756331, at *3 (S.D.N.Y. July 15, 2008) ("the pattern of racketeering did not proximately cause [plaintiff's] injury, and therefore she does not have standing to assert a RICO claim.")*; Uni-Rty Corp. v. Guangdong Bldg., Inc.*, 464 F. Supp. 2d 226, 230 (S.D.N.Y. 2006) ("Plaintiffs' failure of proof concerning this essential [causation] element requires that this Court grant summary judgment.") (citations omitted).

### III. State Law Claims

#### A. Plaintiffs' Consumer Protection Claims Lie in Their Home States

Plaintiffs also argue that the Court should apply the consumer protection and deceptive trade practice statutes of at least nineteen states in which member beneficiaries filled non-CAP prescriptions for Ketek. (Pls.' Mem. at 21.) In response, Defendants contend that only the laws of the states where the TPPs are principally located - New York, Illinois, and Massachusettes - are applicable in this action. (Defs.' Memo at 16.)

Contrary to Plaintiffs position, the controlling consumer protection regimes are those of the TPPs' home states. *See In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 611 n.5 (S.D.N.Y. 2005) (determining that the consumer protection and deceptive trade laws of twenty-five states where the drug was dispersed were immaterial, as the Health Benefits Provider ("HBP") was not suing derivatively for injury to its members); *see also In re K-Dur Antitrust Litig.*, CIV. A. 01-1652 (JAG), 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008) (finding that "the state with the greatest interest in a TPP's claims brought on its own behalf is the state where the TPP has its principal place of busines") (citations omitted). Here, Plaintiffs do not bring a derivative action on behalf of their plan members, but instead Plaintiffs seek to recover money they paid for Ketek prescriptions in their capacity as TPPs. Thus, I conclude that the consumer protection statutes of the TPPs home states control.

#### B. Defendants' Conduct Was Not "Consumer-Oriented" Under New York Law

A plaintiff bringing a deceptive acts and unlawful practices claim under § 349 of the New York General Business Law ("GBL §349") must establish that the alleged act or practice is

9

Case 1:08-cv-00179-SLT-RER Document 154 Filed 09/17/12 Page 10 of 16 PageID #: 21466

"consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). A plaintiff may satisfy the "consumer-oriented" element by showing that the alleged deceptive act or practice "has a broader impact on consumers at large or similarly situated consumers. . . ." *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 491 (S.D.N.Y. 2008) (citation and internal quotation marks omitted). In addition to establishing that the acts were directed at consumers, a plaintiff must "show[] that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego*, 647 N.E.2d at 744 (citation omitted). The New York Court of Appeals adopted "'an objective definition of deceptive acts and practices' as 'those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Rezulin*, 392 F. Supp. 2d at 613 (quoting *Oswego*, 647 N.E.2d at 745).

The *Rezulin* holding is particularly instructive here. In *Rezulin*, the court found that a drug manufacturer's alleged misrepresentations to an HBP was not, "even under a broad definition," consumer-oriented within the meaning of GBL § 349. *Rezulin*, 392 F. Supp. 2d at 614. The court reasoned that the marketing strategy was based on "communication from one sophisticated business to another." *Id.* at 615. The alleged misrepresentations, therefore, were not intended for the diabetes patients, who were the "ultimate consumers." *Id.* at 614. The court further reasoned that, to the extent the alleged misrepresentations had any impact, the effect was felt, not by the patients, but by the HBPs, who allegedly overpaid for the drug treatment. *Id.*

In the present case, Plaintiffs complain of alleged misconduct directed at a broader health care community, including physicians and PBMs. But, Plaintiffs fail to offer evidence of any impact on individual or prospective Ketek patients. As in *Rezulin*, any alleged deceptive

10

communications were transmitted between sophisticated parties. Accordingly, absent a showing of consumer impact, Aventis' alleged misrepresentations are not "consumer-oriented" within the meaning of GBL § 349.

### C. Defendants' Conduct Did Not Cause Cognizable Injury Under Massachusetts Law

A plaintiff "who has been injured" by "unfair or deceptive acts or practices" may bring an action pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A") The Massachusetts district court has recognized that "[t]he scope of cognizable injury under [C]hapter 93A is somewhat uncertain." *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 448 (D. Mass. 2012). Nonetheless, recent caselaw indicates that a plaintiff bringing a Chapter 93A claim must prove actual injury. *Hershenow v. Enter. Rent-A-Car Co.,* 840 N.E.2d 526, 531 (Mass. 2006) ("A consumer is not . . . entitled to redress under [Chapter 93A] where no loss has occurred."). Here, Plaintiffs' purported injury is the loss of money they paid for Ketek prescriptions. In effect, Plaintiffs contend that Aventis' alleged misrepresentations and omissions caused them "to act differently from the way [they] otherwise would have acted" in that they would not have purchased Ketek absent Defendants' alleged fraud. (Pls.' Mem. at 22).

A similar argument was rejected by the Massachusetts district court in *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288 (D. Mass. 2009), aff'd, 607 F.3d 250 (1st Cir. 2010).[2] In *Rule*, the plaintiff brought an action on behalf of herself and a putative class based on the

---

[2] In affirming the district court, the First Circuit acknowledged that although "some tension remains in the language used as between the earlier and the later [Massachusetts Supreme Judicial Court ("SJC")] decisions," the court found that "the most recent SJC cases in point appear to have returned to the notion that injury under [C]hapter 93A means economic injury in the traditional sense." *Rule v. Fort Dodge Animal Health*, 607 F.3d 250 (1st Cir. 2010).

manufacturer defendant's failure to warn consumers of adverse reactions associated with heartworm medicine for dogs. *Rule*, 604 F. Supp. 2d at 290-91. The drug performed as represented and did not injure plaintiff's dog. *Id.* at 304. Plaintiff alleged that she suffered a compensable injury insofar as she "might not have paid as much (or might not have paid anything) for the product if defendants had disclosed those risks." *Id.* at 304. In rejecting plaintiff's claim, the court reasoned that "not every deceptive act or invasion of a legally protected interest constitutes an 'injury' under Chapter 93A." *Id.* The court found that plaintiff failed to establish a compensable loss: she "received the full benefit of the bargain she anticipated from her purchase of [the drug]," because the drug performed as expected and her dog suffered no adverse affects. *Id.*

As in *Rule,* Plaintiffs' alleged loss is the type of speculative injury not actionable under Chapter 93A. Here, Plaintiffs do not provide evidence of any economic injury suffered from Defendants' alleged misconduct, but only speculation that absent Defendants' alleged misrepresentations and omissions, physicians would not have prescribed Ketek, and in turn Plaintffs would not have paid for the prescriptions. In light of this failure to allege an actual injury, Plaintiffs cannot maintain a Chapter 93A claim.

### D. Plaintiffs Cannot Prove Causation Under Illinois Law

Plaintiffs must show, among other elements, that they suffered actual damage proximately caused by Aventis' alleged deception to prevail on their Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). For the same reasons Plaintiffs were unable to establish RICO causation, Plaintiffs cannot show that Aventis' alleged deception caused them actual harm. *See*

*Siegel*, 612 F.3d at 937 (finding that "[plaintiff] cannot show that the defendants' conduct *caused* him to purchase their [artificially inflated] gasoline, because many factors contributed to [plaintiff's] gasoline purchasing decision").

Here, Plaintiffs rely on evidence that the volume of Ketek prescriptions dropped precipitously after the drug's safety and efficacy concerns were made public to demonstrate causation in support of their IFCA claim. (Pls.' Mem. at 22.) While such evidence might indicate that physicians stopped prescribing Ketek after disclosure of the health risks, it does not establish that physicans prescribed Ketek *because* of Aventis' representations in each individual instance. *See* R&R at 16. To the contrary, physicians likely considered many factors in their prescribing decisions. Absent individualized testimony providing the basis of the physicians' decision-making process, Plaintiffs cannot prove causation, and therefore cannot sustain an IFCA claim.

## IV. Unjust Enrichment

Plaintiffs last allege that Defendants unjustly enriched themselves by "profit[ing] handsomely" from their alleged misrepresentations. (Pls.' Mem. at 24.) To support these allegations Plaintiffs offer minimal factual evidence and scant case law. In effect, Plaintiffs fuse the three applicable state standards and provide only conclusory allegations without attention to the nuances of the three jurisdictions' respective unjust enrichment regimes. In the absence of any controlling authority, the Court cannot simply presume that unjust enrichment claims are substantially identical across these states. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (dismissing plaintiffs' unjust enrichment claims for failing to provide "any basis in law" in the amended complaint or "link their claim to the law of any particular state").

There is, in fact, significant variance in the three states' common laws regarding unjust enrichment.  And, after reviewing the respective unjust enrichment laws, it is clear that Plaintiffs cannot proceed with their claim in any of these three states.

In Illinois, as a threshold matter, an unjust enrichment claim must be tied to a related action.  *Siegel*, 612 F.3d at 937 ("A claim of unjust enrichment 'is not a separate cause of action that, standing alone, will justify an action for recovery.'") (citations omitted).  Where, as here, an unjust enrichment claim is conjoined with a separate state claim that is premised on the same alleged misconduct, then that unjust enrichment claim will "stand or fall with the related claim." *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  As discussed in Part III.D, *supra*, Plaintiffs' IFCA claims fail, and as a result summary judgment is appropriate for the accompanying unjust enrichment claim.

In contrast, both New York and Massachusetts[3] law provide for a standalone unjust enrichment claim.  Under these regimes, a plaintiff must establish that one party unjustly retained a benefit to another party's detriment.  *See Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 819 N.Y.S.2d 182, 187 (3d Dep't. 2006) (requiring a showing "that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff"); *Massachusetts Eye and Ear Infirmary*, 552 F.3d 47 at 57 (requiring "unjust enrichment of one party and unjust detriment to another party") (internal quotations and citations omitted).

---

[3]   While Defendants are correct that unjust enrichment is not a separate cause of action in Massachusetts, it is also true that where a plaintiff has no remedy at law, a claim of unjust enrichment is available.  *See Smith v. Jenkins*, 626 F. Supp. 2d 155, 170 (D. Mass. 2009) (permitting plaintiffs to proceed with a standalone unjust enrichment claim, but noting "plaintiffs must eventually make an election between a remedy at law and one in equity"); *see also Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (allowing plaintiffs to proceed with a Chapter 93A and an unjust enrichment claim).

Plaintiffs offer only cursory allegations that Defendants profited from Ketek sales, but do not show that Defendants are unjustly "in possession of money or property belonging to [Plaintiffs]." *See Clifford R. Gray, Inc.*, 819 N.Y.S.2d at 187; *see also Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience.") (citations omitted). Plaintiffs attempt to disgorge Defendants' Ketek profits without evidence that they suffered any detriment as TPPs.

First, Plaintiffs argue that they "paid thousands of dollars" for Ketek prescriptions, and that they did not receive the benefit of their prescription purchases because Ketek was a "dangerous drug" with "more risks than benefits." (Pls.' Mem. at 24.) For the purpose of this case, it is irrelevant whether Plaintiffs' beneficiaries were individually harmed by Ketek, as Plaintiffs do not bring a derivative claim on behalf of plan members.

Second, Plaintiffs contend that Defendants' alleged misrepresentations caused them to "pay scarce healthcare dollars for that drug." However, Plaintiffs do not allege that they paid a premium for Ketek due to Defendants' alleged fraud, nor do they allege that Defendants artificially inflated Ketek prices. Plaintiffs simply paid the market price for a drug prescribed to and fulfilled by their plan members. Under the circumstances of the transactions outlined above, it is not unjust for Defendants to retain profits from these sales.

Thus, it follows that without these, or any other, supporting facts, Plaintiffs unjust enrichment claims under New York and Massachusetts law must fail.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that Defendants' summary judgment motion be granted in its entirety. Any objection to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Sandra L. Townes within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: September 17, 2012**
     **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**